Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
Kyle Wilson (SBN 323888)
kyle@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**SHAWN BEDWELL**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN BEDWELL, an individual, | Case No. 5:21-cv-01340-JGB-SP |
| Plaintiff, | |
| v. | Hon. Jesus G. Bernal |
| TBLB ENTERPRISES LLC, a California limited liability company, SUPER 7 FOOD MART, INC., a California corporation; and DOES 1-10, | **FIRST AMENDED COMPLAINT FOR VIOLATIONS OF: AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181, *et seq.*; UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51, *et seq.*** |
| Defendants. | |
| | DEMAND FOR JURY TRIAL |

Plaintiff Shawn Bedwell (hereinafter referred to as "Plaintiff") complains of Defendants TBLB Enterprises LLC, a California limited liability company; Super 7 Food Mart, Inc., a California corporation; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I.    PARTIES

1.    Plaintiff Shawn Bedwell is paralyzed. His life path was changed by a back surgery which had a bad outcome, resulting in permanent and debilitating nerve damage to his spinal column. Plaintiff mainly relies on a wheelchair for mobility, but occasionally will use a walker or forearm crutches. His ability to move objects with his upper body are also impaired.  Plaintiff is a disabled person entitled to the protections of the California Unruh Civil Rights Act (UCRA) (*see* Cal. Civ. Code §§ 51, *et seq.*, 52, *et seq.*), the Americans with Disabilities Act (ADA) (*see* 42 U.S.C. § 12102, *et seq.*), and other statutory laws which protect the rights of "disabled persons."  Plaintiff has been issued a blue permanent Disabled Person Parking Placard, by the State of California.  Plaintiff is a California resident with physical disabilities.

2.    Defendant TBLB Enterprises LLC, a California limited liability company, owned the property (the "Property"), located at 1091 W Valley Blvd., Colton, CA 92324.

3.    There is a business establishment on the Property named "C 2 Food

Mart," (hereinafter, "the business").

4.    Defendant Super 7 Food Mart, Inc., a California corporation, is/was a lessee of the Property, owns/owned the business named "C 2 Food Mart," and has/had control over its business at all relevant times.

5.    The businesses are public accommodations as defined by 42 U.S.C. § 12181(7).

6.    DOES 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, affiliates, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and, therefore, sues those Defendants by fictitious names.  Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

7.    Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, franchisors, lessees, lessors, general partners, limited partners, agents, affiliates, employees, employers, representative partners, subsidiaries, partner companies, and/or joint venturers of the remaining Defendants; and were acting within the course and scope of that relationship.  Upon information and belief, Plaintiff alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining Defendants.

FIRST AMENDED COMPLAINT

8.     Plaintiff visited the public accommodations owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants.

## II.     JURISDICTION & VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) & (a)(4) for violations of the ADA.

10.     Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts, and arising out of the same transactions, is also brought under the UCRA, which expressly incorporates the ADA.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the real property which is the subject of this action is located in this district, and Plaintiff's cause of action arose in this district.

## III.     FACTS

12.     The Property is a facility which is open to the public and includes business establishments.

13.     The Property has been newly constructed and/or underwent remodeling, repairs, or alterations after January 26, 1992.  Defendants have failed to comply with California access standards which applied at the time of each new construction and/or alteration, and/or failed to maintain accessible features in operable working condition.

4

14.     Plaintiff visited the Property during the relevant statutory period on three (3) separate occasions, in March 2021 and June 2021, to patronize the business on the Property.

15.     Defendants did not offer persons with disabilities with equivalent facilities, privileges, and advantages offered by Defendants to other patrons.

16.     Plaintiff encountered barriers, both physical and intangible, that interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services, privileges, and/or accommodations offered at the Property.

17.     Parking is one of the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

18.     However, there was no accessible parking for disabled patrons at the Property.  The parking space designated for disabled persons did not comply with the ADA.

19.     The parking area did not comply with the applicable California Building Code (CBC).

20.     When Plaintiff visited the Property, he experienced access barriers related to parking, signage, entryways, the business interior, and restrooms.

21.     Plaintiff encountered the following barriers, conditions, and/or violations at the Property:

**VIOLATION of 1991 ADAS § 4.6.2; 2010 ADAS § 208.3.1; 2010 CBC § 1129B.1; 2019 CBC § 11B-208.3.1.** (Minimize travel distance.) The designated accessible parking space is not located on the shortest accessible route to the building/business entrance. The parking spaces located closest to the entrance of the business are not designated accessible spaces. The space reserved for disabled persons are located farther. Plaintiff, a wheelchair user, needs to park in the space that is nearest to the building/business entrance because it is more difficult for him to maneuver around the property than someone without disabilities.  Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property.

**VIOLATION of 2019 CBC § 11B-502.6; 2010 ADAS § 502.6.**  (Sign obscured.)  The sign identifying the designated disabled parking space is illegible because it is covered with graffiti.  This makes it difficult for Plaintiff and other patrons to see and read the sign.  Plaintiff, a wheelchair user, needs to be able to use an accessible parking space, with an access aisle, to safely access the Property. Clear signage that explicitly marks the designated disabled parking space will deter others without disabilities from parking in the space and thereby blocking him from being able to use it.

FIRST AMENDED COMPLAINT

**VIOLATION of 1991 ADAS § 4.23.6; 2010 CBC § 1115B.3.1.3.**

(Accessible lavatory.)  At least five percent (5%) of lavatories, but not less

than (at least) one lavatory shall be accessible (i.e., shall comply with

accessibility requirements).  An accessible lavatory is/was not provided.

**VIOLATION of 1991 ADAS § 4.19.6; 2010 ADAS § 603.3; 2010 CBC §**

**1115B.8.1.** (Mirror height in restroom.) Mirrors must have a bottom edge of

the reflecting surface located a maximum of forty inches (40") above the

floor if above a sink or counter. Here, the mirror in the restroom is/was

mounted too high, making it difficult for Plaintiff to use the restroom.

**VIOLATION of 1991 ADAS § 4.17.3; 2010 CBC § 1115B.4.1.** (Front of

water closet – clear floor space.) The required minimum of sixty inches (60")

wide and forty-eight inches (48") deep clear floor space in front of the water

closet is/was not provided.

**VIOLATION of 2010 §§ ADAS 604.5, 604.5.2.** (Rear grab bars in

accessible lavatory.) Grab bars shall be provided on the rear wall directly

behind the water closet. The rear grab bar shall be thirty-six inches (36") long

minimum and extend from the centerline of the water closet twelve inches

(12") minimum on one side and twenty-four inches (24") minimum on the other side. Here, the rear wall grab bar is/was incorrectly installed, which made (would make) it difficult for Plaintiff to transition from his wheelchair to the toilet seat, and vice versa.

22.    Plaintiff personally encountered the foregoing barriers, conditions, and/or violations.

23.    These barriers, conditions, and/or violations denied Plaintiff full and equal access, and caused him difficulty, humiliation, and/or frustration.

24.    The barriers, conditions, and/or violations existed during each of Plaintiff's visits in March 2021 and June 2021.

25.    Furthermore, although Plaintiff did not personally encounter all of the following barriers, conditions, and/or violations, Plaintiff is informed that the following barriers, conditions, and/or violations, which affect access for mobility-impaired wheelchair users like him, remain at the Property:

**VIOLATION of 2010 ADAS § 216.6; 2019 CBC § 11B-216.6.** (Accessible entrance.) In buildings where not all entrances are accessible, the entrance(s) that are accessible and usable by persons with disabilities must be identified. There is no International Symbol of Accessibility at the front entrance.

**VIOLATION of 1991 ADAS § 4.13.10; 2010 ADAS § 404.2.8.1; 2010 CBC § 1133B.2.5.1; 2019 CBC § 11B-404.2.8.1.** (Front door closer.) The front entrance door is equipped with a door closer and returns to a closed position too quickly. Plaintiff is a wheelchair user; therefore, he cannot move out of the doorway as quickly as others without disabilities. Thus, he requires a safe entrance that allows him sufficient time to pass through without the risk of being injured by the closing door. The safe, accessible entrance must be clearly marked with an ISA sign so that he can find it.

**VIOLATION of 2010 ADAS § 308.1; 2019 CBC § 11B-308.1.** (Reach ranges.) Where a clear floor or ground space allows a parallel approach to an element and the side reach is unobstructed, the high side reach shall be forty-eight inches (48") maximum and the low side reach shall be fifteen inches (15") minimum above the finish floor or ground. Where a forward reach is unobstructed, the high forward reach shall be forty-eight inches (48") maximum and the low forward reach shall be fifteen inches (15") minimum above the finish floor or ground. Here, the cups, lids and straws at the beverage station are positioned too high (greater than forty-eight inches (48") for either a side or front approach. The hot water dispenser lever at the coffee making machine is also positioned too high for either a side or front

9

approach.

**VIOLATION of 1991 ADAS § 4.5.3; 2010 ADAS § 302.2; 2010 CBC § 1124B.3; 2019 CBC § 11B-302.2.** (Floor mat.) Floor mats must be securely attached to a stable surface. The floor mat at the sales and service counter is not secured in place, which can cause rolling and buckling, making maneuvering with a wheelchair more difficult.

26.     Defendants knew that the foregoing architectural barriers prevented access.  Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented access, and that the noncompliance with the ADA Standards for Accessible Design (ADAS), ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), and/or the California Building Code (CBC) was intentional.

27.     Plaintiff intends and plans to visit the Property again soon.  Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

28.     Defendants have failed to maintain in working and useable condition those features necessary to provide ready access to persons with disabilities.

FIRST AMENDED COMPLAINT

29.     Defendants have the financial resources (i.e., financial ability) to remove these barriers without much expense or difficulty in order to make the Property more accessible to their mobility impaired customers (i.e., disabled persons).  The removal of these barriers is readily achievable.  The United States Department of Justice has determined that removal of these types of barriers is readily achievable.

30.     Defendants refuse to remove these barriers.

31.     On information and belief, Plaintiff alleges that Defendants' failure to remove these barriers was/is intentional, because the barriers are logical and obvious.  During all relevant times, Defendants had authority, control, and dominion over these conditions.  Thus, the absence of accessible facilities was/is not a mishap; it was/is the result of intentional actions or inaction.

32.     These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's agents and/or experts.  *See Doran v 7-ELEVEN, Inc.,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them).

## IV. FIRST CAUSE OF ACTION:  VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT OF 1990

**(42 U.S.C. § 12101, *et seq*.)**

(Against All Defendants)

33.    Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

34.    Title III of the ADA prohibits discrimination against any person on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.  42 U.S.C. § 12182(a).

35.    Defendants discriminated against Plaintiff by denying him "full and equal enjoyment" and use of the goods, services, facilities, privileges, and/or accommodations they offered during each visit, and each incident of a deterred visit.

36.    The acts and omissions of Defendants herein were/are in violation of Plaintiff's rights under the ADA and the regulations codified at 28 C.F.R. Part 36, *et seq.*

37.    Pursuant to the ADA, discrimination is a "failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate

that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."  42 U.S.C. § 12182(b)(2)(A)(ii).

38.    The ADA requires removal of architectural barriers in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv) ("discrimination includes … a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, … where such removal is readily achievable").  The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Barriers are defined by reference to the ADA Standards for Accessible Design (ADAS), found at 28 C.F.R. Part 36, including the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), at Part 36, Appendix A.

39.    If removal of any barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if the alternative methods are readily achievable.  42 U.S.C. § 12182(b)(2)(A)(v).

40.    Defendants can remove the architectural barriers at their facility without much difficulty or expense.  Defendants violated the ADA by failing to remove the barriers because removal was readily achievable.  For instance, there

13

FIRST AMENDED COMPLAINT

are companies which can repaint parking areas for as little as $350. Defendants can afford such costs, which are a fraction of what Defendants receive in (rental or business) profits in connection with such a large and expensive property.

41.    Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make their services available through alternative methods which are readily achievable.

42.    On information and belief, Plaintiff alleges that the facility was altered after January 26, 1992, mandating compliance with accessibility requirements under the ADA.

43.    The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

44.    Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to physically disabled persons to the maximum extent feasible.

45.    The ADA also requires reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges,

14

FIRST AMENDED COMPLAINT

advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii).

46.     Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Property when these modifications were necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations.

47.     Plaintiff seeks a finding from this Court that Defendants violated the ADA, so that he may pursue damages under California's Unruh Civil Rights Act.

48.     Here Defendants' failure to make sure that accessible facilities were available to, and ready to be used by, Plaintiff was/is a violation of law.

49.     Plaintiff would like to continue to frequent the Property, however, he is deterred from doing so because he has been discriminated against and is aware of accessibility barriers at the Property.

50.     Among the remedies sought, Plaintiff seeks an injunction order requiring compliance with federal and state disability access laws, and remediation of the existing access violations (i.e., removal of the existing barriers) at the Property.

## V. SECOND CAUSE OF ACTION:  VIOLATION OF THE

## UNRUH CIVIL RIGHTS ACT

### (Cal. Civ. Code §§ 51-53)

(Against All Defendants)

FIRST AMENDED COMPLAINT

51.     Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

52.     California Civil Code § 51 states, in part:  "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

53.     California Civil Code § 51 also states, in part:  "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

54.     California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA into the Unruh Civil Rights Act (UCRA).

55.     The UCRA also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the UCRA.  Cal. Civ. Code § 51(f); *see Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

56.     Defendants' above-mentioned acts and omissions have violated the UCRA by denying Plaintiff his rights to full and equal use of the accommodations, advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disability.

57.     Defendants' above-mentioned acts and omissions have also violated

FIRST AMENDED COMPLAINT

the UCRA by denying Plaintiff his rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages.  *See* Cal. Civ. Code § 51(f), 52(a).

58.     Because Defendants' violation of the UCRA resulted in difficulty, discomfort, and/or embarrassment for Plaintiff, Defendants are each also responsible for statutory damages.  *See* Cal. Civ. Code § 55.56(a), (c).

59.     Plaintiff was (actually) damaged by Defendants' wrongful conduct. He seeks actual damages, and statutory minimum damages of four thousand dollars ($4,000) for each offense (i.e., for each occasion that Plaintiff was denied full and equal access).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For injunctive relief compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act.  Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and statutory minimum damages of $4,000 per each offense.

3. Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205, and Cal. Civ. Code § 52.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: September 13, 2021        THE LAW OFFICE OF HAKIMI & SHAHRIARI


                                 By:    /s/ Anoush Hakimi
                                        ANOUSH HAKIMI, ESQ.
                                        Attorney for Plaintiff Shawn Bedwell

FIRST AMENDED COMPLAINT