UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 21-1340 JGB (SPx)** | Date | October 29, 2021 |
| Title | *Shawn Bedwell v. TBLB Enterprises LLC* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**  Order (1) DENYING IN PART and GRANTING IN PART Defendants' Motion to Dismiss (Dkt. No. 16); and (2) VACATING the November 1, 2021 Hearing (IN CHAMBERS)

Before the Court is a Motion to Dismiss brought by Defendants TBLB Enterprises LLC and Super 7 Food Mart, Inc. ("Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(1). ("Motion," Dkt. No. 16.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court DENIES IN PART and GRANTS IN PART Defendants' Motion. The November 1, 2021 hearing is VACATED.

## I.  BACKGROUND

On August 10, 2021, Plaintiff Shawn Bedwell ("Mr. Bedwell" or "Plaintiff") filed a complaint against Defendants and Does 1-10. ("Complaint," Dkt. No. 1.) Mr. Bedwell filed a first amended complaint on September 13, 2021. ("FAC," Dkt. No. 14.) The FAC alleges two causes of action: (1) violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.; and (2) violation of the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51 – 53. (Compl. ¶¶ 33–59.)

On September 24, 2021, Defendants filed this Motion. (See Motion.) In support of the Motion, Defendants attached the following documents:

- Declaration of Jason James, a California Certified Access Specialist ("CASp") ("James Declaration," Dkt. No. 16-2);

- Mr. James's inspection report ("James Report," Dkt. No. 16-3); and
- Declaration of Devinder Gill ("Gill Declaration," Dkt. No. 16-4).

Mr. Bedwell opposed the Motion on October 4, 2021. ("Opposition," Dkt. No. 20.) Defendants replied on the same date. ("Reply," Dkt. No. 21.)

## II. FACTUAL ALLEGATONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this motion.

Mr. Bedwell is paralyzed and mainly relies on a wheelchair for mobility, but occasionally uses a walker or forearm crutches. (Compl. ¶ 1.) His ability to move objects with his upper body are also impaired. (Id.) Mr. Bedwell has a blue permanent Disabled Person Parking Placard issued to him by the State of California. (Id.)

On three separate occasions in March 2021 and June 2021, Mr. Bedwell visited the C 2 Food Mart ("Mart") with the intent to purchase or use the goods, services, facilities, privileges, advantages, and accommodations offered. (Id. ¶¶ 4, 8, 14.) Defendant Super 7 Food Mart, Inc owns the Mart and leases the property on which the Mart stands from Defendant TBLB Enterprise LLC. (Id. ¶¶ 2–4.) Mr. Bedwell alleges that all three businesses are public accommodations under the ADA. (Id. ¶ 5.)

On each visit, Mr. Bedwell personally encountered six barriers that interfered with and denied his ability to use and enjoy the goods, services, privileges, and accommodations the Mart offered. (Id. ¶¶ 16, 21–24.) He alleges that: (1) the designated accessible parking space is not located on the shortest accessible route to the Mart's entrance; (2) the sign identifying the designated accessible parking space is covered with graffiti and illegible; (3) the Mart does not provide an accessible lavatory; (4) the mirror in the Mart's restroom is mounted too high; (5) the water closet does not have the requisite clear floor space in front of it; and (6) the rear wall grab bars in the restroom are incorrectly installed. (Id. ¶ 21.) These barriers denied Mr. Bedwell full and equal access and caused him difficulty, humiliation, and frustration. (Id. ¶ 23.)

Mr. Bedwell also alleges the Mart has four barriers that he did not encounter: (1) the Mart's front entrance does not have the International Symbol of Accessibility ("ISA"); (2) the front entrance door closes too quickly; (3) cups, lids, straws, and the hot water dispenser on the Mart's beverage station are located out of the legal reach range; and (4) the floor mat at the sales and service counter is not secured in place. (Id. ¶ 25.)

Mr. Bedwell intends and plans to visit the Mart again soon, but is reasonably deterred because of the existing barriers. (Id. ¶¶ 27, 49.)

//
//

### III. LEGAL STANDARD

**A. Rule 12(b)(1)**

Defendants move to dismiss the FAC under Rule 12(b)(1) of the Federal Rules of Civil Procedure. (See Mot.) A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, without which a federal court cannot adjudicate the case before it. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994). Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." Sierra v. Dep't of Fam. & Child. Servs., 2016 WL 3751954, at *3 (C.D. Cal. Feb. 26, 2016) (quoting Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)). Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Comm. for Immigrant Rights v. County of Sonoma, 644 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, [the Court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" Warren, 328 F.3d at 1139 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

### IV. DISCUSSION

Mr. Bedwell alleges federal question subject matter jurisdiction under 28 U.S.C. § 1331 based on the ADA claim, and supplemental jurisdiction over the Unruh Act claim. (FAC ¶¶ 9–10.) Defendants facially and factually attack the Court's subject matter jurisdiction over the FAC. (See Mot.; Reply at 2.) Defendants argue that Mr. Bedwell lacks standing to assert his ADA claim and that the claim is also moot. (Id. at 11–17). In the absence of federal question jurisdiction, Defendants ask the Court to decline to exercise supplemental jurisdiction over Mr. Bedwell's Unruh Act claim. (Id. at 17–21.) The Court disagrees-in-part and agrees-in-part.

**A. Article III Standing**

Defendants argue that Mr. Bedwell lacks standing for his ADA claim because he: (1) fails to allege an injury-in-fact, and (2) fails to demonstrate he is deterred from visiting C 2 Food Mart in order to establish a real and immediate threat of repeated injury. (Mot. at 11–13, 15–17.)

To establish standing, individuals with disabilities who allege violations of the ADA must "demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [Defendants'] actions, and that the injury can be redressed by a favorable decision." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011). Only injury-in-fact is at issue here. A plaintiff alleges an injury-in-fact under the ADA when he alleges what specific barriers he encountered "and how his disability was affected by them so as to deny him the 'full and equal' access." Id. at 954. See also Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, (9th Cir. 2021) (finding the plaintiff had alleged an injury-in-fact under Chapman).

Mr. Bedwell seeks injunctive relief, the only remedy available for private litigants under the ADA. Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1)). Standing for his ADA claim thus requires an additional element: "a 'real and immediate threat of repeated injury' in the future." Chapman, 631 F.3d at 946 (quoting Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004). This means "a sufficient likelihood that he will again be wronged in a similar way." Id. at 948 (citing City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)). In the Ninth Circuit, a plaintiff establishes this element when he: (1) "demonstrat[es] deterrence" from returning to the noncompliant public accommodation because of encountered barriers; or (2) "demonstrat[es] an injury-in-fact coupled with an intent to return to a noncompliant facility." Id. at 944, 949.

1. **Facial Challenge**

Defendants first facially attack Mr. Bedwell's standing. They contend that Mr. Bedwell fails to allege an injury-in-fact under the Chapman standards. (Mot. at 11–13.) They acknowledge that Mr. Bedwell alleges numerous barriers he encountered at C 2 Food Mart. (Mot. at 13.) However, they assert that he fails to explain how those alleged barriers "affected his ability to 'visit' the property." (Id.) Mr. Bedwell argues that he has alleged how the barriers impacted his ability to access the property for each violation.[1] (Opp'n at 6–7.)

Chapman articulates the injury-in-fact requirement in the ADA context. As in the instant case, the plaintiff in Chapman had a mobility impairment and used a wheelchair as a result. 631 F.3d at 943. The plaintiff complained that some architectural features at the defendant's store "denied him full and equal enjoyment of the premises." Id. However, the plaintiff "never allege[d] what [ ] barriers" he encountered in his complaint. Id. at 954. Instead, he "attached to his complaint an 'Accessibility Survey,' which listed barriers known to him." Id. The Court found these actions deficient for two reasons: Not only did the plaintiff fail to allege required facts in the complaint itself, but in the affixed survey the plaintiff "does not even attempt to

---

[1] The Court notes that Mr. Bedwell hardly addresses Defendants' standing arguments. He mainly argues that Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), rather than Rule 12(b)(1), is the correct standard to apply here. (Opp'n at 2–6.) This is incorrect. A challenge to Mr. Bedwell's Article III standing implicates the Court's subject matter jurisdiction. Accordingly, Defendants correctly brought the Motion pursuant to Rule 12(b)(1).

relate the alleged violations to his disability." Id. at 955. In the absence of any allegations "connecting the alleged violations to Chapman's disability, or indicating whether or not he encountered any one of them in such a way as to impair his full and equal employment of the Store," the plaintiff could not demonstrate an injury-in-fact. Id. at 954–55.

The Ninth Circuit recently reaffirmed Chapman's standards in Whitaker. 985 F.3d at 1179. In Whitaker, the plaintiff was a wheelchair user who "encountered inaccessible service counters that denied him full and equal access to the Tesla dealership and 'created difficulty and discomfort.'" Id. at 1175. The complaint "allege[d] that [the plaintiff] uses a wheelchair for mobility, that he visited the defendant's premises, that he personally encountered a barrier related to his disability—inaccessible service counters—and that the barrier deters him from returning." Id. at 1179. According to the Court, "[t]hese allegations [were] sufficient to establish injury-in-fact for purposes of standing." Id. The plaintiff's "identification of a specific barrier distinguishes his complaint from Chapman." Id. Moreover, the plaintiff had alleged that the barrier of "inaccessible service counters" was "related to his disability" of "us[ing] a wheelchair for mobility." Id.

The Court finds Whitaker instructive. As in Whitaker, the FAC alleges that Mr. Bedwell "relies on a wheelchair for mobility, but occasionally will use a walker or forearm crutches." (FAC ¶ 1.) On three separate occasions, Mr. Bedwell visited the Mart, where he personally encountered barriers. (Id. ¶¶ 14, 16.) Unlike in Chapman, Mr. Bedwell specifically identifies in the FAC six barriers he personally encountered during these visits, as well as four barriers he did not personally encounter. (Id. ¶¶ 14, 21, 25.) Moreover, Mr. Bedwell alleges the connection between the encountered barriers and his disability. For example, Mr. Bedwell alleges the following:

(1) "Minimize travel distance": Mr. Bedwell alleges that because "[t]he designated accessible parking space is not located on the shortest accessible route to the building/business entrance," it "is more difficult for [Plaintiff]," who is "a wheelchair user," to "maneuver around the property than someone without disabilities." (Id. ¶ 21.)

(2) "Sign obscured": Mr. Bedwell alleges that "[t]he sign identifying the designated disabled parking space is illegible because it is covered with graffiti." (Id.) He further alleges that "[t]his makes it difficult for Plaintiff and other patrons to see and read the sign. Plaintiff, a wheelchair user, needs to be able to use an accessible parking space," and "[c]lear signage … will deter others without disabilities from parking in the space and thereby blocking from being able to use it." (Id.)

The Court concludes that these allegations establish injury-in-fact under the ADA for the above violations.

//
//

In addition, the Court finds that Mr. Bedwell has alleged a real and immediate threat of future injury.  The FAC alleges that the above barriers deter Mr. Bedwell from returning to the Mart.  (FAC ¶¶ 27, 49.)  Mr. Bedwell also alleges that he intends to return to the Mart.  (Id. ¶¶ 27, 49.)  These allegations, taken as true, establish standing to sue for injunctive relief under either of the two methods articulated by Chapman.[2]  "[W]here [Mr. Bedwell] has Article III standing to bring a claim for injunctive relief under the ADA because of <u>at least one statutory violation</u> of which he [ ] has knowledge and which deters access to, or full use and enjoyment of, a place of public accommodation, he [ ] may conduct discovery to determine what, if any, other barriers affecting his [ ] disability existed at the time he [ ] brought the claim."  Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1043–44 (9th Cir. 2008) (emphasis added).  Accordingly, the Court concludes that Mr. Bedwell has standing to seek injunctive relief for all ten of the encountered and unencountered barriers.  Chapman, 631 F.3d at 944.

### 2. Factual Challenge

Defendants next launch a factual attack on Mr. Bedwell's standing.  They assert that the Mart's restroom is for employees only and not a "public accommodation" covered by the ADA.  (Mot. at 13–14.)  For support, Defendants attach the affidavit of a certified access specialist who inspected the Mart and his evaluation report.  Defendants contend that, based on this evidence, injuries arising from the restroom cannot confer standing.

Whether Mr. Bedwell has failed to allege an element of an ADA claim is a merits question, not a standing question.  See, e.g., Doran, 524 F.3d at 1048 (considering whether "the exclusion of a disabled plaintiff from an employees-only restroom does not violate the ADA").  Mr. Bedwell correctly notes that such arguments normally must be brought under a Rule 12(b)(6) motion at the pleading stage.  (Opp'n at 2–4.)  Defendants also correctly note that a court may at times resolve factual challenges to subject matter jurisdiction by converting a Rule 12(b)(1) motion to a motion for summary judgment.  (Reply at 2–3.)

//
//
//
//
//

---

[2] In Whitaker, the Court noted that the plaintiff "visits privately-owned businesses to determine whether their facilities comply with the standards set out in Title III of the [ADA]."  985 F.3d at 1174.  If "a facility he visits is not in compliance, Whitaker files a complaint seeking injunctive relief to force the business to remedy the barriers he encountered."  Id.  Nevertheless, the Court concluded the plaintiff sufficiently alleged he was deterred from returning to the defendant's store.  Id. at 1179.  Whitaker shows that a plaintiff's pattern of bringing ADA claims against noncompliant businesses does not, as a rule, demonstrate a lack of an intent to return.  See also Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Trust, 867 F.3d 1093, 1102 (9th Cir. 2017) ("[M]otivation is irrelevant to the question of standing under Title III of the ADA.")

However, as noted above, "the question of jurisdiction and the merits of this action [must be] intertwined" for the Court to look beyond the pleadings. Safe Air for Everyone, 373 F.3d at 1040. This means that "the ADA must "provide[] the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." Id. This is not the case here. The Court has already found that Mr. Bedwell has standing based on alleged statutory violations in the Mart's parking lot. Defendants' public accommodation argument is thus unnecessary to determine jurisdiction, at least with respect to standing. The Court will not consider Defendants' extrinsic evidence or make factual determinations as to the merits of Mr. Bedwell's claim regarding the restrooms.

Defendants' remaining argument contests Mr. Bedwell's ability to demonstrate existing violations and deterrence. (MTD at 15-17.) Relying again on extrinsic evidence, Defendants argue that Mr. Bedwell assumes "conditions that do not exist," due to remediation or because the alleged barriers are not out of compliance with the ADA. (Id. at 15-17.) While Defendants characterize this argument as one that implicates both standing and mootness, the Court finds that it is a mootness question only. The Court thus addresses it in the following section.

In sum, the Court rejects Defendants' facial and factual challenges to Mr. Bedwell's standing. Mr. Bedwell has established standing to seek injunctive relief for his ADA claim. The Court DENIES the Motion on this basis.

**B.  Mootness**

Defendants argue that the Court still lacks subject matter jurisdiction because the statutory violations Mr. Bedwell alleges are moot. (Mot. at 14-17.) For support, Defendants cite to their CASp expert's declaration and report that conclude the alleged barriers are ADA compliant. (See James Decl.; James Report.) Based on the uncontroverted evidence provided, the Court agrees with Defendants that Mr. Bedwell's ADA cause of action is moot.

"Mootness is a jurisdictional defect that can be raised at any time by the parties or the court sua sponte." Lopez v. Garcia Apartments, LLC, 2014 WL 12696711, at *3 (C.D. Cal. Dec. 19, 2014). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Id. (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). "The question is whether there can be any effective relief." West v. Sec'y of Dep't of Transp., 206 F.3d 920, 925 (9th Cir. 2000). Under the ADA, "[b]ecause the only relief available … is injunctive, the fact the alleged barrier has been remedied renders the issue moot." Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006); see also Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011) ("[A] defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim."). "[T]he burden of demonstrating mootness is 'heavy' and must be carried by the party claiming that the case is moot." Porter v. Bowen, 496 F.3d 1009, 1017 (9th Cir. 2007).

//
//

1. **"Minimize travel distance"**

   Mr. Bedwell alleges that the Mart's designated accessible parking space "is not located on the shortest accessible route to the building/business entrance." (FAC ¶ 21.) The ADA Standards for Accessible Design ("ADAS") state that "[p]arking spaces … shall be located on the shortest accessible route from parking to an entrance." 2010 ADAS § 208.3.1. Defendants' expert finds that the Mart's accessible parking space is compliant. (James Decl. ¶ 17.) He reports that "[t]he location of the accessible parking space, access aisle and ramp provide the most direct and shortest safe path of travel for individuals requiring accessible features." (James Report at 15.) Even if the parking space could be moved, the most it could be moved is four feet. (Id.) Moreover, James observes that this would not necessarily minimize the distance an individual would have to travel, as the individual would still need to navigate to the ramp. (Id.) The ramp cannot "be moved over any appreciable distance without encroaching into the clear space required at the entrance." (Id.) Mr. Bedwell does not dispute these findings. Accordingly, the Court concludes Mr. Bedwell's ADA claim as to this violation is moot.

2. **"Sign obscured"**

   Mr. Bedwell alleges that the sign identifying the Mart's designated accessible parking space is covered with graffiti and illegible. (FAC ¶ 21.) "Parking space identification signs shall include the [ISA]," and "[s]igns identifying van parking spaces shall contain the designation 'van accessible.'" 2010 ADAS § 502.6. Defendants' expert reports that the sign is compliant. (James Decl. ¶ 21.) His report includes a photo of the sign, which shows minimal graffiti that does not obscure the sign's words or symbol as to render them illegible. (James Report at 20, 28.) Mr. Bedwell does not dispute these findings, which controvert his allegation. Accordingly, the Court concludes Mr. Bedwell's ADA claim as to this violation is moot.

3. **"Accessible lavatory"**

   Mr. Bedwell alleges that the Mart does not provide an accessible lavatory. (FAC ¶ 21.) He cites to the 1991 ADA Standards, which states that "[i]f lavatories and mirrors are provided, then at least one of each shall comply with 4.19." 1991 ADAS § 4.23.6. Defendants' expert finds that "[a]n accessible lavatory is not required," because "[t]here are no public restrooms provided." (James Report at 12.) Moreover, Mr. Bedwell does not dispute that the Mart does not provide a public restroom such that an accessible lavatory is not required. Accordingly, because Defendants' evidence controverts Mr. Bedwell's allegation and is not disputed, the Court concludes Mr. Bedwell's ADA claim as to this violation is moot.

//
//
//
//
//
//

4. **"Mirror height in restroom"**

Mr. Bedwell alleges that the mirror in the Mart's restroom is "mounted too high, making it difficult for Plaintiff to use the restroom." (FAC ¶ 21.) To comply with the ADA, "[m]irrors located above lavatories or countertops shall be installed with the bottom edge … 40 inches (1015 mm) maximum above the finish floor or ground." 2010 ADAS § 603.3. Defendants' expert finds that "[t]here are no public restrooms provided" as to require mirror height compliance. (James Report at 22.) Mr. Bedwell does not dispute this finding. Accordingly, the Court concludes Mr. Bedwell's ADA claim as to this violation is moot.

5. **"Front of water closet – clean floor space"**

Mr. Bedwell alleges that the Mart does not have the requisite "clear floor space" in front of its water closet. (FAC ¶ 21.) In California, "[a] minimum of 60 inches (1524 mm) wide and 48 inches (1219 mm) deep maneuvering space shall be provided in front of the water closet." 2019 Cal. Build. Code ("CBC") § 11B-604.3.1. Defendants' expert finds that "[t]here are no public restrooms provided" as to require floor space in front of the water closet. (James Report at 24.) Mr. Bedwell does not dispute this finding. Accordingly, the Court concludes Mr. Bedwell's ADA claim as to this violation is moot.

6. **"Rear grab bars in accessible lavatory"**

Mr. Bedwell alleges that the rear grab bar in the bathroom is incorrectly installed and makes "it difficult for [him] to transition from his wheelchair to the toilet seat." (FAC ¶ 21.) To comply with the ADA, the position of rear wall grab bars must meet certain specifications. 2010 ADAS §§ 604.5.2; 604.5. Defendants' expert finds that "[t]here are no public restrooms provided" as to require compliance with the rear grab wall requirements. (James Report at 26.) Mr. Bedwell does not dispute this finding. Accordingly, the Court concludes Mr. Bedwell's ADA claim as to this violation is moot.

7. **"Accessible entrance"**

Mr. Bedwell alleges that "[t]here is no [ISA] at the front entrance." (FAC ¶ 25.) Accessible entrances must have the ISA symbol only if not all of the building's entrances are accessible. 2010 ADAS §§ 216.6, 404. A photo presumably of the Mart's sole entrance shows there is no ISA symbol. (James Report at 2.) However, Defendants' expert observes that the Mart has only one entrance. (James Decl. ¶ 23.) That entrance, while lacking the ISA symbol, had other ISA signage affixed to the doors. (Id. ¶ 25.) He thus concludes that "[a]ll entrances are accessible" at the Mart such that "[n]o ISA is required." (James Report at 2; James Decl. ¶ 24.) Mr. Bedwell does not dispute this finding. Accordingly, the Court concludes Mr. Bedwell's ADA claim as to this violation is moot.

//
//

8. **"Front door closer"**

Mr. Bedwell alleges that "[t]he front entrance door is equipped with a door closer and returns to a closed position too quickly." (FAC ¶ 25.) For door closers, "the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum." 2010 ADAS § 404.2.8.1. When Defendant's expert inspected the door, he "observed the doors at the front entrance closed more slowly than the minimum time required." (James Decl. ¶ 29.) Timestamps on his video recordings of the doors closing appear to confirm his finding that the doors take "greater than five seconds" to close. (James Report at 3–8; James Decl. ¶ 30.) Mr. Bedwell does not dispute this finding. Accordingly, the Court concludes Mr. Bedwell's ADA claim as to this violation is moot.

9. **"Reach ranges"**

Mr. Bedwell alleges that cups, lids, straws, and hot water dispenser on the Mart's beverage station are located "too high" for him to reach. (FAC ¶ 25.) "Where a forward reach is unobstructed, the high forward reach shall be 48 inches (1220 mm) maximum and the low forward reach shall be 15 inches (380 mm) minimum above the finish floor or ground." 2010 ADAS § 308.2.1. Defendants assert that they remedied this barrier by moving the cups, lids, and straws forward on the counter, and reducing the height of the hot water dispenser by two inches following Mr. Bedwell's visits. (MTD at 9–10; Gill Decl. ¶ 9.) Defendants' expert states that he measured the reach range of the relocated items and found them compliant. (James Decl. ¶¶ 34, 36–41.) Photos in his report confirm that the items are within 48 inches from the ground. (James Report at 9, 30–34.) Mr. Bedwell does not dispute this finding. Accordingly, the Court concludes Mr. Bedwell's ADA claim as to this violation is moot.

10. **"Floor mat"**

Mr. Bedwell alleges that "[t]he floor mat at the sales and service counter is not secured in place." (FAC ¶ 25.) "Carpet or carpet tile shall be securely attached and shall have a firm cushion, pad, or backing or no cushion or pad." 2010 ADAS § 302.2. Defendants' expert deems the floor mats compliant. (James Decl. ¶ 46; James Report at 10.) He reports that the mats are secure, are "of heavy rigid design manufactured with suction compartments so as to secure them to the sold surface floor," and do not "move, lift, or buckle." (James Decl. ¶¶ 43–44.) He also notes that "floor mats are firmly secured with 2-sided tape." (James Report at 10.) Mr. Bedwell does not dispute this finding. Accordingly, the Court concludes Mr. Bedwell's ADA claim as to this violation is moot.

//
//
//
//
//
//

In sum, Defendants have demonstrated that the alleged barriers are in compliance with the ADA or that they have remedied the barriers to eliminate any potential violations. Mr. Bedwell fails to controvert Defendants' evidence with any findings or affidavits of his own. Yet he requests the Court to hold an evidentiary hearing on the violations. (Opp'n at 7.) The Court denies Mr. Bedwell's request. Because Mr. Bedwell holds the burden of establishing subject matter jurisdiction, he should have submitted evidence in the Opposition to overcome Defendants' mootness argument. See Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."). Mr. Bedwell has missed his timing and has failed to meet his burden.

Accordingly, the Court concludes that Mr. Bedwell's ADA claim is moot. Because the Court lacks subject matter jurisdiction, the Court GRANTS the Motion and DISMISSES the ADA claim under Rule 12(b)(1).

**C. Supplemental Jurisdiction**

Defendants ask the Court to decline exercising supplemental jurisdiction over Mr. Bedwell's Unruh Act cause of action if the ADA claim is dismissed. (Mot. 17–18.) Without the federal claim, Defendants argue that "comity and fairness strongly favor dismissal of the remaining state law claims." (Mot. at 18.)

A district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). This power is discretionary. A court "may decline to exercise supplemental jurisdiction over a claim," including "if the district court has dismissed all claims over which it has original jurisdiction."[3] Id. § 1367(c)(3). Because the Court has dismissed Mr. Bedwell's ADA claim, over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the Unruh Act claim. Accordingly, the Court GRANTS the Motion and DISMISSES the Unruh Act claim under Rule 12(b)(1).

//
//

---

[3] Defendants assert that supplemental jurisdiction is improper because Mr. Bedwell's Unruh Act claim predominates over his ADA claim. (Mot. at 20.) A court may decline to exercise supplemental jurisdiction over a state-law claim "if the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Mr. Bedwell again presents no argument as to why this Court should retain jurisdiction over his state law claim. While the Court notes Defendants' argument, the Court declines to exercise supplemental jurisdiction on a different basis: that the claim over which it had original jurisdiction has been dismissed. Id. § 1367(c)(3).

## V.  CONCLUSION

For the reasons above, the Court DENIES IN PART Defendants' Motion as to Plaintiff's standing to assert Count One.  The Court GRANTS IN PART Defendants' Motion as to Count One under mootness and to Count Two.  The November 1, 2021 hearing is VACATED.

**IT IS SO ORDERED.**